FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ JUN 15 2011

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

RAFAEL PARNELL,

                              Petitioner,

        -against-

WILLIAM LAPE, Superintendent, Coxsackie
Correctional Facility,

                          Respondent.

------------------------------------------------------------x

**MEMORANDUM & ORDER**

09-CV-2912 (ENV)

**VITALIANO, D.J.**

Pro se petitioner Rafael Parnell is before the Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the writ is denied and Parnell's habeas petition is dismissed.

## I. BACKGROUND

On February 26, 2005, Parnell was arrested for possession of crack cocaine. He was charged under Kings County Indictment Number 1414/2005, with two counts of criminal possession of a controlled substance in the third degree, one count of criminal possession of a controlled substance in the fourth degree, and two counts of criminal possession of a controlled substance in the seventh degree.

### A. Jury Selection

Jury selection commenced on November 13, 2006. (Tr. at 1.)[1] Sixteen prospective jurors were seated and the court made inquiry of the venire. Based on the responses, two prospective jurors were excused on consent and replaced. (Id. at 52-53.) After questioning by the prosecutor and defense counsel, the People peremptorily challenged six prospective jurors and the defense

---

[1] References to "Tr." denote the transcript of the voir dire proceedings, dated November 13, 2006, Exhibit A to Respondent's Opposition to Petition for a Writ of Habeas Corpus.

1



peremptorily challenged seven prospective jurors. (Id. at 93-95.) The remaining three members on the panel were seated as jurors. (Id. at 94, 111.)

The prosecution then made a Batson motion, arguing that the defense had "not used any peremptory challenges on any individuals other than white individuals." (Id. at 95.) The defense followed up with a Batson motion of its own, arguing that the prosecutor had himself "struck all black people." (Id. at 96.) Addressing the People's motion first, the court stated that the prosecutor had not sufficiently established a prima facie case, but nonetheless asked defense counsel to explain why she struck the jurors. (Id. at 96-97.) Defense counsel went on to provide race-neutral reasons, which the prosecutor challenged as pretextual.[2] (Id. at 97-100.) Upon further prodding by the court, the prosecutor conceded that defense counsel's reasons for striking Viggiano and Browe were not pretextual.

Moving to the second Batson motion, the court asked defense counsel which jurors her motion specifically covered. (Id. at 106.) Of the six black jurors originally identified, defense counsel withdrew her motion with respect to three, renewing her contention that the challenges to Arthur Greenwood, Lutricia McKrae, and Terry Edwards-Cross were racially motivated. (Id. at 106-07.) After questioning by the judge, the prosecutor withdrew his peremptory challenges

_____

[2] As to the seven jurors, defense counsel provided the following reasons:
  (1) Felicia Fitzpatrick-Lucey was struck because she was the victim of a chain snatching and had a cousin or nephew who had a drug addiction.
  (2) Paul Ford was struck because defense counsel felt that he was not comfortable with her after she questioned him about his military service.
  (3) Alan Vaco was struck because he was previously arrested for a marijuana charge and stated during questioning that he had no problem with the police.
  (4) John Viggiano was struck because he was an Assistant District Attorney in Staten Island.
  (5) Ana Browe was struck because she hesitated in response to a question about whether a police officer could lie.
  (6) Julie Isdith was struck because her cousin was an Assistant District Attorney in Brooklyn.
  (7) Nick Dellacave was struck because he had been a member of Narcotics Anonymous for 23 years.
(Id. at 97-99.)

on Greenwood and McKrae, leaving only Edwards-Cross, who he claims to have struck because she stated she had a deposition that was important to her that would take her focus off the trial. (Id. at 107-08.)

The court then ruled on the whittled down motions. It found that the reasons offered by defense counsel as to Isdith and Vaco were "illusory or pretextual" and "too far removed," (id. at 109), and, as to the prosecutor's challenges, the court agreed with defense counsel that the reason offered for striking Edwards-Cross was illusory. (Id. at 109-10.) Jury selection resumed and a jury was eventually selected without further Batson litigation.

## B. Jury Deliberations

Jury deliberations began on November 20, 2006. (Trial Tr. at 520.)[3] The court received a note stating that "[j]uror [n]umber four would like to speak to the Judge." (Id. at 523.) Juror number four, Greenwood, informed the court that he feared for his safety because he realized that morning that he "may have seen [petitioner] around in [his] area" and did not know how it would influence his vote. (Id. at 524-25.) Greenwood reiterated that he was most concerned about his safety. (Id. at 525.) After questioning, he confirmed that neither petitioner nor any other person had reached out to him on petitioner's behalf. (Id. at 525-26.) He also stated that he was not sure if it was in fact Parnell whom he had seen. (Id. at 525.) The judge specifically asked Greenwood if he could "remain open and fair," and he responded affirmatively. (Id. at 526.)

In response to an inquiry from defense counsel, Greenwood also informed the court that he had told juror number three, Leonard Presley, that he felt uncomfortable. (Id. at 529.) The

---

[3] References to "Trial Tr." denote the transcript of the trial, Exhibit B to Respondent's Opposition to Petition for a Writ of Habeas Corpus.

court then questioned Presley, who recounted the conversation but stated that it had "[n]ot at all" affected his ability to remain fair and impartial. (Id. at 530-31.)

After an unrelated read back of testimony to the jury, defense counsel made an application to discharge Greenwood on the basis that he was afraid of Parnell. (Id. at 533-34.) The court denied the application, emphasizing that Greenwood was "quite forthright" by bringing his concerns to the court's attention and answered "quite assuredly" that he could remain objective. (Id. at 534-35.) Defense counsel then requested that Greenwood be questioned outside Parnell's presence. (Id. at 535.) The court denied that request, noting that the court would not "inquire with regards to a deliberating jury as to something of this import outside the presence of the defendant notwithstanding [the] motion." (Id. at 535-36.)

## C. Conviction and Post-Trial Proceedings

Later that day, the jury reached a verdict, finding Parnell guilty of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. He was sentenced as a second felony offender to a term of imprisonment of nine years, followed by three years of post-release supervision on the controlled substance in the third degree conviction. Parnell was also sentenced to three years custody, followed by three years of post-release supervision, on the controlled substance in the fourth degree conviction. Both sentences were ordered to run concurrently.

Parnell appealed to the Appellate Division, Second Department, raising three claims. First, he argued that he was deprived of his right to a fair trial when two prospective jurors were seated even though defense counsel proffered race-neutral reasons for her peremptory challenges. He next argued that he was deprived of his due process right to a fair trial by the court's refusal to replace a juror who stated that he was afraid of him and its subsequent refusal

4

to question that juror outside his presence in an effort to elicit more candid responses on the renewal of the defense's once-denied motion. Finally, petitioner argued that the court's sentence was excessive in light of his documented and exemplary employment history, as well as his service to his religious community and family. On March 31, 2009, the Appellate Division affirmed the convictions. People v. Parnell, 60 A.D.3d 1087, 877 N.Y.S.2d 131 (2d Dept. 2009). With respect to petitioner's first claim, the Appellate Division found that "[t]he record support[ed] the court's finding of pretext with regard to the two prospective jurors at issue," because "defense counsel did not challenge other jurors with similar backgrounds." Id. at 1087. It next held that the "deliberating juror was not grossly unqualified to serve on the jury since, after expressing a generalized concern for his safety, he was not certain that he had seen the defendant in his neighborhood and he assured the court that he would remain fair and impartial." Id. Finally, the Appellate Division concluded that "[t]he sentence imposed was not excessive." Id. at 1088. On May 28, 2009, the New York Court of Appeals denied petitioner's application for leave to appeal. See People v. Parnell, 12 N.Y.3d 857, 881 N.Y.S.2d 669, 909 N.E.2d 592 (2009).

On July 2, 2009, Parnell timely filed the instant habeas petition, presenting the same three claims raised on direct appeal before the Appellate Division.

## II.    STANDARD OF REVIEW

The Supreme Court has made it clear that "[a]s amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not

a substitute for ordinary error correction through appeal. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n. 5, 99 S. Ct. 2781, 2795 n.5 (1979)). Following AEDPA, a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause of 28 U.S.C. § 2254(d)(1) unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., for the Court, Part II). Similarly, a federal court is not free to issue a writ of habeas corpus under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413. But a state court's "unreasonable application" of law must have been more than "incorrect or erroneous:" it must have been "'objectively unreasonable.'" Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (quoting Williams, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)).

Lastly, claims that were not adjudicated on the merits in state court are not subject to the deferential standard that applies under AEDPA. See, e.g., Cone v. Bell, 129 S. Ct. 1769, 1784 (2009) (citing 28 U.S.C. § 2254(d)). But where AEDPA's deferential standard of review does apply, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Smith v. Herbert, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003). This is because "[a]lthough state prisoners may sometimes submit new

6

evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them

from doing so." Cullen v. Pinholster, 131 S. Ct. 1388, 1401 (2011). Under AEDPA's

deferential standard of review, "'[f]ederal courts sitting in habeas are not an alternative forum for

trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'"

Id. (quoting Williams, 529 U.S. at 437).

## III.  DISCUSSION

### A. Batson Challenge

Parnell first argues that his due process right under Batson was violated by the trial court

seating Isdith and Vaco as jurors.  Respondent submits that this claim is not cognizable on

federal habeas review because the right to exercise peremptory challenges in state criminal cases

arises solely from New York Criminal Procedure Law § 270.25.  Indeed, "[i]n conducting habeas

review, a federal court is limited to deciding whether a conviction violated the Constitution,

laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 480

(1991).  However, Parnell's claim, in the form of a "reverse-Batson" challenge,[4] is adequately

grounded in federal law.  In Batson v. Kentucky, the Supreme Court held that "[p]urposeful

racial discrimination in selection of the venire violates a defendant's [constitutional] right to

equal protection because it denies him the protection that a trial by jury is intended to secure."

476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986).  The Court later extended Batson to "prohibit[]

defense counsel from exercising racially motivated peremptory challenges." Thompson, 528

F.3d at 115 (citing Georgia v. McCollum, 505 U.S. 42, 59, 112 S. Ct. 2348 (1992)).  Here, the

trial court granted the People's reverse-Batson motion during jury selection as to jurors Isdith

---

[4] When the prosecutor contends that defense counsel has engaged during jury selection in
"discriminatory conduct [it] has come [to] be known as a 'reverse-Batson' challenge." United
States v. Thompson, 528 F.3d 110, 115 (2d Cir. 2008).

and Vaco, implicating exactly the type of claim recognized in <u>McCollum</u> that is cognizable on federal habeas review. That New York law creates an independent statutory right to interpose such objection is immaterial.

<u>Batson</u>, it is quite renown, established a three-part test to be applied when determining whether a party made a peremptory challenge in a discriminatory manner.

> First the defendant must make a <u>prima</u> <u>facie</u> showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

<u>Hernandez v. New York</u>, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 1866 (1991) (citing <u>Batson</u>, 476 U.S. at 96-98, 106 S. Ct. at 1722-24). The first two steps of <u>Batson</u> are easily satisfied. In order to make out a <u>prima</u> <u>facie</u> <u>Batson</u> claim of discriminatory peremptory challenges, the movant must show "that the totality of the relevant facts gives rise to an inference of discriminatory purpose," including, for example, a "pattern of strikes" against jurors of a particular race or adversary counsel's "questions and statements during [the] <u>voir</u> <u>dire</u>." <u>Batson</u>, 476 U.S. at 94, 97, 106 S. Ct. at 1721, 1723. Such factors are not exclusive, and it is left to "trial judges, experienced in supervising <u>voir</u> <u>dire</u> [to] be able to decide if the circumstances concerning the [counsel's] use of peremptory challenges creates a <u>prima</u> <u>facie</u> case of discrimination against [] jurors [of a particular race]." <u>Id.</u> at 97.

During jury selection for Parnell's trial, the defense exercised seven peremptory challenges, all of which were used against white jurors. There were nine white jurors in the 18 person venire; counsel thus struck seven of the nine. Petitioner argues, and the Court agrees, that the trial judge did not appear to make a <u>prima</u> <u>facie</u> finding of race-based strikes. In fact, the trial

court initially seemed to state just the opposite—that a prima facie case of discrimination had not

been established by the People:

| | |
|---|---|
| THE COURT: | So other than the fact that they are white, are there any other circumstances? Miss Mull [defense counsel] pointed out certain circumstances regarding certain jurors. Is there anything that you wish to point out about those particular jurors which leads to your assertion of the Batson? |
| MR. INGLE: | Well, to put it this way, all of these people that defense counsel has moved to strike also said they would be fair and impartial, so there would be no reason other than ethnicity. It is obvious that those are the reasons that defense counsel used to strike the jurors. |
| MS. MULL: | I still don't feel that is enough to prove a prima facie allegation under Batson. |
| THE COURT: | I agree. I don't think it is established sufficiently. Well, as to the individuals, Miss Mull, go through them and tell me what it is about them. |

(Tr. at 97.) Nonetheless, by eliciting the race-neutral reasons for the strikes, the court had in fact

moved on to the second step of Batson, effectively reversing any prior contrary finding at the

first step. Though such imprecision, regardless of the reason, is never optimal, the court

marched on toward the ultimate issue and, indeed, it is well-settled that the preliminary step of

the inquiry may be deemed moot "[o]nce [the striking attorney] has offered a race-neutral

explanation for the peremptory challenges and the trial court has ruled on the ultimate question

of intentional discrimination." Hernandez, 500 U.S. at 359. Therefore, despite the court's

failure to formally reverse itself and make a finding of prima facie discrimination on the record,

by moving on to the second step, this failure was rendered academic, raising no issue of

constitutional dimension.

At the second step, the burden shifts to the nonmoving party to provide a facially neutral

explanation for the peremptory challenges under attack. Batson, 476 U.S. at 97. "The

nonmoving party's burden at step two is very low," McKinney v. Artuz, 326 F.3d 87, 98 (2d Cir.

9

2003), and the nonmoving party's explanation "need not rise to the level justifying exercise of a challenge for cause." Batson, 476 U.S. at 97. Nor need it be persuasive or even plausible. An explanation will be found race-neutral "[u]nless a discriminatory intent is inherent." Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771 (quoting Hernandez, 500 U.S. 352 at 360).

Parnell's counsel offered the following race-neutral reasons for exercising defense challenges against Isdith and Vaco:

MS. MULL:    As to Mr. Vaco, he is an individual who was arrested for a marijuana charge, and being asked that has to do with a drug issue, and upon me asking if he had a problem with the police or not, he stated he did not. But police interaction is a big part. But most specifically, because of the arrest, we feel that there is some issue there that I don't see necessarily want to see influenced that may influence him.
...

MS. MULL:    As to Miss Isdith, her cousin is a District Attorney in Brooklyn here.

(Tr. at 98-99.) These could certainly qualify as facially neutral, non-pretextual reasons as they are "based on something other than the race of the juror." Hernandez, 500 U.S. at 360. Of course, the Batson formula requires the trial court to press on.

The third step of Batson is where the analysis becomes more difficult. The nonmoving party, having presented a facially neutral explanation for the peremptory challenges, the trial court must now determine whether the challenging party has met its burden of proving that the peremptory challenge was in fact the result of purposeful discrimination. Batson, 476 U.S. at 98. While the burden is on the moving party throughout the Batson challenge, at this third step, the persuasiveness of the nonmoving party's facially neutral explanation becomes relevant. Galarza v. Keane, 252 F.3d 630 (2d Cir. 2001). The trial judge must make the "ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." Jordan v. Lefevre, 206 F.3d 196, 200 (2d Cir. 2000) (quoting United States v. Alvarado, 923 F.2d 253, 256

10

(2d Cir. 1991)). Here, the trial judge determined that defense counsel's reasons for striking Isdith and Vaco were pretextual, overruled the strikes and seated the jurors. Regarding Isdith, the judge noted that, although her cousin had been an Assistant District Attorney in Brooklyn, Isdith said during questioning that they were not close and did not keep in touch. In fact, she was not even sure whether her cousin still worked at the District Attorney's office. (Tr. at 109.) With respect to Vaco, the court found that his marijuana arrest, which was 25 years ago, was too far removed. (Id.)

Petitioner argues that the trial court's decision to seat Isdith and Vaco was erroneous. His petition points to a number of supporting reasons. First, Parnell notes that Vaco's experience with the police was quite different than his; that Vaco's perception of the police after his arrest was positive, whereas Parnell's defense was centered on police misconduct. Moving to Isdith, Parnell argues that even if she was not in close contact with her cousin, she could be inclined to find in favor of the prosecution, the very office she knew that her cousin had at least worked for at one time. Moreover, he correctly notes that the trial court had previously struck Viggiano, who was an Assistant District Attorney in Staten Island, and Dellacave, whose son was an Assistant District Attorney in Manhattan.

These arguments based on the race-neutral reasons proffered by defense counsel, along with Parnell's supplemental explanations, are far from frivolous. However, the trial court had the benefit of demeanor during inquiry and argument and its conclusion when undergoing post-trial scrutiny is entitled to significant deference. The Second Circuit has held that the third step of the Batson inquiry gives the trial judge the discretion to make "an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." Alvarado, 923 F.2d at 256. Sitting in one of the world's busiest jury trial courts, the trial judge found as a matter of

11

fact that the explicably race-neutral reasons proffered for the strikes were indeed pretextual. This "ultimate question of discriminatory intent represents a finding of fact that will be set aside only if clearly erroneous." United States v. Taylor, 92 F.3d 1313, 1326 (2d Cir. 1996). The review on this petition is, of course, even more circumscribed by AEDPA. It is against this tide that petitioner must swim.

In any event, there is more adverse texture to the record than the black letter headlines suggest. Regarding Vaco, it appears that defense counsel chose not to exercise peremptory challenges against other prospective jurors with deep ties to law enforcement and who would also conceivably have a pro-police bias and reject the defense theory of police misconduct. Defense counsel seated Presley, who was a New York City Police Department School Safety Officer, as well as Williams, who had been married to a New York City police officer for 20 years, had a niece who was about to enter the Police Academy, and had two nephews in the FBI. Similarly, with respect to Isdith, the race-neutral proffer rested on an even more remote law enforcement connection—her non immediate familial relationship to a prosecutor. But, there is a clear distinction between striking Viggiano, who was himself a prosecutor, and Dellacave, whose close relative was a prosecutor, and Isdith, who stated that she was "out of touch" with her cousin and was not even sure whether she currently worked at the District Attorney's office, that is, given the remoteness, the race-neutral proferred reason could be viewed as improbable.

At bottom, the question presented here first focuses on whether there was a discriminatory intent in the defense strikes successfully attacked by the prosecutor. Arguably providing insight, Presley and Williams had far deeper "police/law enforcement connections" than either Vaco or Isdith. Defense counsel did not move to strike them. Both are black, Vaco and Isdith are white. In these circumstances, the trial court could have reasonably concluded that

the defense proffer was pretextual and hid a discriminatory motive, which was the true basis for

the strikes. In short, there is adequate record evidence to support the trial court's conclusions—

at least to insulate them from being labeled "clearly erroneous." The nature of a Batson

challenge is such that "[t]here will seldom be much evidence bearing on [the issue of

discriminatory intent], and the best evidence often will be the demeanor of the attorney who

exercises the challenge." Hernandez, 500 U.S. at 365; see also McKinney, 326 F.3d at 98. Since

the trial judge is in the best position to make this evaluation and demeanor evidence is generally

unpreservable for review, the ultimate determination of discriminatory intent "represents a

finding of fact of the sort accorded great deference on appeal." Hernandez, 500 U.S. at 364

(citing Batson, 476 U.S. at 98 n.21). Both the trial court and the Appellate Division concluded

that Isdith and Vaco were properly seated following a sustainable reverse-Batson challenge.

Such factual findings by "state courts are presumed to be correct, and may be set aside . . . only if

they are 'not fairly supported by the record.'" Purkett, 514 U.S. at 769 (quoting 28 U.S.C. §

2254(d)(8)). In these straits, Parnell simply cannot survive the tide. He has not presented "clear

and convincing evidence" to rebut the presumption that the state court acted reasonably. Alston

v. Phillips, 703 F. Supp. 2d 150, 175 (E.D.N.Y. 2010) (quoting Miller-El v. Dretke, 545 U.S.

231, 240, 125 S. Ct. 2317, 2325 (2005)).

The Court, moreover, is especially mindful of its role on federal habeas review. AEDPA

directs that Parnell's habeas petition can be granted only if the Second Department's finding

upholding the prosecution's reverse-Batson challenge is not only erroneous but an unreasonable

application of federal law. Cox v. Donnelly, 387 F.3d 193, 200 (2d Cir. 2004). In the soft

lighting of AEDPA's second look, the Appellate Division's decision must be evaluated by the

Court to see whether it "reflect[s] some additional increment of incorrectness such that it may be

said to be unreasonable." Id. (quoting Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001)). Given the record evidence and the wide berth Batson accords to trial judges as a matter of law, the Court cannot make such a finding. There is enough evidence in this case, bolstered by the presumption of correctness, justifying the state court's decision, and, as a result, a writ may not issue on Batson grounds.

## B. Right to a Fair Trial

The Sixth Amendment "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642 (1961). Petitioner contends that he was denied his right to a fair trial by the court's refusal to (1) replace juror number four, Greenwood, who, ironically, had been a subject of the defense's Batson challenge to the prosecutor's peremptory strikes, and (2) question Greenwood outside Parnell's presence. His contentions lose sight of the fact that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . . [It] means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v. Phillips, 455 U.S. 209, 217, 102 S. Ct. 940, 946 (1982). More critically, a habeas court may only overturn a finding of impartiality in extreme cases of "manifest error." Patton v. Yount, 467 U.S. 1025, 1031, 104 S. Ct. 2885, 2889 (1984) (internal citations omitted).

In this case, juror number four, Greenwood, informed the trial judge that he was concerned about his safety because he may have seen Parnell in his area. The trial judge confirmed that Parnell had not reached out to Greenwood and engaged in the following colloquy:

> THE COURT: In terms of your safety, Mr. Greenwood, there is no indication that there would be any reason for you to be in fear for your life or your well-being. There's been – no one has reached out to you. No one has gone to talk to you. While I understand there is a responsibility of serving as a juror,

14

there seems to be no indication right now that there would be any kind of threat to you. Granted, while I understand your position as a civilian sitting on a case in Supreme Court, but there has been no indication that anyone has reached out to you to cause you to be in fear for your safety.

JUROR:          No.

THE COURT:      Right. So what I'm going to ask you to do is try and remain – well, not try, but to remain open-minded and be fair both to the prosecution and the defendant in your evaluation of the evidence. And like I said, I'm not dismissing your thought at all.

JUROR:          Okay.

                ...

THE COURT:      Can you assure me you will remain open and fair?

JUROR:          Yes, sir.

(Trial Tr. at 525-26.) Defense counsel then questioned Greenwood, and, while he admitted that the issue was "in [his] mind," he emphatically assured the judge that he could "absolutely" follow the court's instructions and "abide by [his] oath and judge [the] case by the evidence in a fair and impartial manner." (Id. at 527-28.) Defense counsel then asked whether there was a "reasonable expectation that that [would] be impossible given [his] fear," and Greenwood responded that he didn't know how to answer the question. (Id. at 528.) The court again clarified, asking whether Greenwood could "maintain a focus and . . . abide by the oath and judge [the] case fairly and impartially." (Id.) He responded affirmatively. (Id. at 529.)

Parnell, notwithstanding its inquiry of the juror, argues that the trial court's decision was incorrect, particularly because the judge could have simply replaced Greenwood with an alternate. Juror replacement on a criminal defendant's demand would certainly have appeal-proofed the verdict from the instant assault. But, certainly nothing in the record would mandate juror replacement. In any case, more pertinently, on federal habeas review, the decision not to

15

relieve Greenwood easily passes muster given the thorough, probing and comprehensive inquiry made by the trial court. This Court cannot, and will not, second guess the trial judge's determination to continue with Greenwood. After all, the trial court "which 'observ[es] the jury on a day to day basis . . . is in the best position to sense the atmosphere of the courtroom as no appellate court can on a printed record.'" United States v. Abrams, 137 F.3d 704, 708 (2d Cir. 1998) (quoting United States v. Barnes, 604 F.2d 121, 144 (2d Cir. 1979)). Furthermore, the Appellative Division considered this claim on direct appeal and found that "the court properly concluded that [Greenwood] was not grossly unqualified to serve on the jury since, after expressing a generalized concern for his safety, he was not certain that he had seen the defendant in his neighborhood and he assured the court that he would remain fair and impartial." Parnell, 60 A.D.3d at 1087. That decision, surely, was not incorrect. And, even if incorrect, the Court is without the power to grant relief because "[f]or purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, 131 S. Ct. at 785 (quoting Williams, 529 U.S. at 410) (emphasis in original). Under AEDPA, there is no basis for the Court to find that the trial court's decision not to replace Greenwood, and the Appellate Division's express affirmance of it, was *contrary to*, or an *unreasonable* application of, the Sixth Amendment or any other applicable provision of federal law. While this standard may appear to be difficult to overcome, the Supreme Court has punctuated with an exclamation point that the hurdle seems Herculean because "it was meant to be." Harrington, 131 S. Ct. at 786.

Petitioner's related contention that the trial court abused its discretion when it refused to question Greenwood outside Parnell's presence is also without merit. Nothing in the record suggests that Greenwood was not being candid during questioning by either the judge or defense

16

counsel. To the contrary, as the court noted, Greenwood had been "quite forthright" in coming forward with his concerns. (Trial Tr. at 534.) The court's decision not to reopen an already determined issue and not to question Greenwood further certainly did not deprive Parnell of his due process right to a fair trial, whether considered de novo or under some deferential standard. The writ of habeas corpus is denied. There was no constitutional error, either substantively or procedurally, in failing to discharge Greenwood from further service on Parnell's jury.

## C. Excessive Sentence

Parnell's final claim attacks his nine year sentence imposed upon conviction of the criminal possession of a controlled substance in the third degree charge. He argues that the sentence should be reduced in the interest of justice in light of his age, employment history, and service to his religious community. Because this claim rests exclusively on state law grounds, it is not cognizable on habeas review. See 28 U.S.C. § 2254(d); McGuire, 502 U.S. at 67-68, 112 S. Ct. at 480. Viewed purely as a matter of constitutional objection to excessiveness, assuming such federal claim had even been fairly presented on direct appeal, it is well settled that a prison sentence cannot be found to violate the Eighth Amendment prohibition on cruel and unusual punishment by virtue of its length so long as it falls within the established statutory range covering the crime of conviction. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."). As a second felony drug offender, the court could have imposed a minimum sentence of three-and-a-half years and a maximum sentence of 12 years. Since Parnell's sentence of nine years falls within the statutory range, he cannot bring such a constitutional claim on this petition. Accordingly, his excessive sentence claim is dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the petition for habeas corpus filed by Rafael Parnell is dismissed and the writ is denied.  Since Parnell has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).  In this light, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
      June 13, 2011

ERIC N. VITALIANO
United States District Judge